Good morning, Your Honors. Gregory Peterson on behalf of the plaintiffs and appellants. Are you planning to argue? I'm making my appearance first. This is a very simple case, actually. It concerns the Fair Labor Standards Act and an exemption provided to police officers and employers that they can, after 171 hours, accrue and not pay, if there is an agreement to do so, compensatory time off in lieu of cash. That's the whole sin quo non of this case is can they do that. The answer is no, they can't. The reasons are simple. It's not after 171 hours. I thought we were talking about a period of less than 171 hours but more than their assigned time. The 171 is the obligation created and a total that must be exceeded under the CFRs and a 28-day period. And we have 8, 9, 10, and 12-hour shifts. And those shifts all create what they call a gap time between whether they work 150 hours or 171. That would be a 21-hour gap time. That's not our issue. That's the defense's issue. Our issue is... I thought that was your issue. Yeah, I thought that was your issue, too. Well, it is and it is not in the sense that it's... Gap time is really not included in the calculation of LSA damages. Gap time is a contractual obligation that they pay time and a half on. Right, okay. Now, when we get to 171 hours under their bookkeeping system, they say that they're going to pay cash. They specifically disavow the right to use comp time under 2070 in the LAPD. There will be no comp time. Once we get to 172 or 3 or 4 hours, we start losing money for our clients, all of them. Their system does not compute FLSA time. It only computes contract time. I don't understand anything you're saying. Okay. In terms of the way this case was argued, as I understood it. Because I understood it, that what you're complaining about all along was paying comp time for the gap time. I'm sorry. Well, that's pretty peculiar in terms of what everybody else has understood the case to be from day one. That was issue number one decided by Judge Feist, and he says you're wrong, but that was an issue. Is that not an issue? It is an issue. It's on appeal. Well, okay. I guess what I'm trying to do is prioritize the issues. The first issue I think. First, this is your issue. May a public agency employer satisfy its obligation to compensate employees for overtime created solely by a public sector labor law contract and not by the FLSA by utilizing compensatory time off? Right. That's not the gap time? No, it's more fundamental. As I pointed out in the trial court. The issue is can a government use comp time? And the answer to that question is no. Now, comp time, excuse me, let me be more specific so I understand what you're saying. You're saying the question is can the LAPD use comp time for the gap period? Is that the question? No. Well, everybody understands then that if we're in FSLA, if we're in the period above 172 hours, 171 hours, that it has to be cash. We got that. I don't think anybody's disputing that. That's by way of their employment contract. Right. And they could have comp time, but they had to disavow it because there are all kinds of rules about how the comp time has to be, and they say we're not doing it. We're paying cash. That's right. Fine. Okay. Now what? Now, what they do is they don't calculate FLSA comp time in a pay period. In other words, in LAPD, you have two pay periods and a 28-day cycle. But that's because they're not paying FLSA comp time. They're paying money. But they have to track FLSA time to avoid failing to pay it. Right. And they don't, and that's why they fail to pay it. Most officers have not got a hard time getting past 171 hours in a 28-day DP. Do they go past 171 hours or they don't? They do. Okay. And they're not getting paid cash for the time over 171 hours. That's my point. Well, that is certainly not the point in the briefs. I tried to make it clear. Maybe I was. The declaration from the city is that they pay it. They pay cash for that. For comp time. That's what they say. For time over the 171, as I understood the declaration. And our declarations are counter declarations. All right. So tell me exactly what you say they're not doing. Aside from the fact that it wasn't raised. They're not keeping adequate records under FLSA, which is required. They are not paying for FLSA time in excess of the gap period, which is only FLSA-controlled. They are paying what they call comp time to the gap time. Okay. In other words, gap time is getting paid under the contract. And with comp time. With comp time. The problem is California statute makes it very clear. Cities may not use comp time. Oh, really? Where's that? Even for the gap period. I thought the California statutes don't apply to cities. Actually, the opposing council recently lost the LA truck driver's case, and it does apply to cities. But this particular statute says comp time is only applicable to private sector, not to municipalities. So the law did not grant them that authority, and they have no other basis. And in a recent argument. Their basis is whatever the city law says about paying comp time, because the state law doesn't apply. I don't know what the LA truck driver's case is. You never told us about it. It just came out. It's us. That's fine. That's why you're supposed to tell us about it. Yeah. I apologize for that, Your Honor. The point that I'm trying to make, though, is defendant Appellee cannot stand up here today and say that doesn't apply, because he was in that case. That case specifically said home rule is overstated. Can we stop and start over? You got me so totally confused. I want to see what I understand and what I don't understand. As I see it, we've got two issues on appeal. Issue number one, in the order in which they appear in your brief, and the order in which they appear in Judge Feist's decision. Issue number one is during the gap period, may compensation time be given for that time? You say no, they have to pay cash. The city says we get to do comp time. Judge Feist says comp time is permitted. That's issue number one. Right. Issue number two is for the period when we get into FSLA time, when we're in excess of 171 hours, when it's conceded that the city has to pay cash, has the city properly paid cash when it's obliged to do so? And Judge Feist says you've not submitted sufficient proof of that, and so you lose. Do I understand the case properly? Yes. Okay. Now, can I go to the second one first? Whichever one you want. Okay. So the second one being, are they actually paying cash when they're required to do so? Yes. Okay. Under FSLA rules. Now, to get to that point, Judge Feist applied the wrong standard. I'm sorry, I'm hoarse.  His standard was shifting of burdens. That's not the way that statute's interpreted. The FLSA specifically requires all statutes that create an exemption be narrowly defined and strictly enforced. Is this about the 20% problem? No, that's a separate problem. We're dealing with the comp time right now. Well, I don't, I don't, now you're dealing with comp time. Okay, let's talk about comp time. The comp time that we're dealing with right now is we have officers, because of the way they report, the first two weeks it comes in. They pay everything in there in comp time if it's overtime. Okay. They don't look or pay FLSA overtime in the first paid day, in the 28-day DP. When they, and this is in the declaration provided by the city, they're experts on this. They have numerous mistakes because they don't track FLSA time. So when it comes to the second paycheck in the 28-day period, they don't get their comp time, which is due on the day of pay, and it doesn't happen. Then they have to go and get it corrected, which makes it quite a hassle, and it violates, it's a very simple case. You have to pay your money on the day that it's due, and they don't. We have officer after officer just absolutely not getting their pay under this statute. So we're entitled to- Any argument about any of that in the briefs? Is there? Yes. Yes, where? Show me where. First is, as I said, I think it was repeated. First, to me, a public agency employer satisfies its obligation to compensate employees for overtime created solely by a public sector labor contract and not the FLSA. Right, and summary of argument. As to the city's use of a compensatory time off to pay for gap time, which is what we all thought the case was about, plaintiffs argue that its use is unauthorized under federal and California law. Absent authorization, payment of wages by way of compensatory time off is illegal. It says nothing about FLSA time paid in cash. It's not correct. It doesn't say anything about that. I see what you're saying, Your Honor. The point of the statement is there is no right to use comp time, either under state law, contract, or otherwise, and therefore they're not getting paid. There's no right to use comp time when? Are you now talking gap time, or are you talking in excess of 171 hours? They can't do it in gap time for recent changes in the law, which just happened. But they can't do it particularly under the FLSA. I believe it's 553.25 of the set-up law. But why didn't they do it by the contract? This was in their contract. Well, because the contract assumed. Yeah. Bargaining for this. The union bargained, but it did not follow the law. And the union and city cannot make an agreement that violates the FLSA. And here it just clearly violates the FLSA, because when you read 2070 and CFRs, it is clear. You may not take any action which is inconsistent with the benefits of the FLSA. Comp time is not a benefit. Comp time is we're not going to have you come in today. It's used to alter liabilities by saying we don't need you. Change their shift and then charge comp time. That's what it's being used for. And it's not going out in cash, and there's no legal authority to give them any comp time. They have cited it. They've said the state law says they can do it. It can't. And they know it now because it just decided in the fourth DCA against LA. So there is no right to give comp time under their contract, which they specifically wanted to circumvent. And I don't think there's anything I can help except maybe answer some questions at this point. Why don't we hear from the other side, and you've got about two and a half minutes to respond. Thank you. Good morning, Your Honors. May it please the Court. Jeff Sheldon for the city of Los Angeles. You know what new case he's talking about? I don't, Your Honor. LA truck drivers. Oh, the case he was talking about. Yes, Gravina v. City of Los Angeles. It involved trash truck drivers. And the Court of Appeal, the State Court of Appeal, held that state wage and hour law would apply to trash truck drivers and trash truck drivers only because of a specific wage order. I believe it's wage order nine as to their meal periods. And the Court found that not allowing trash truck drivers to sleep on their meal breaks was a statewide concern and therefore overrid the home rule doctrine because this is a charter city. It has no application whatsoever to this case. Moreover, I point out there is no state claim at issue in this case. It was dismissed. That's wrong. What was that? It was dismissed, but there was an appeal from the final judgment. So what's the problem? It was not part of the appeal that they raised. What do you mean by it wasn't part of the appeal? You mean it wasn't in the notice of appeal? Correct. Is that dispositive of anything? They only appealed the summer judgment order. If that's dispositive of anything, it doesn't happen all the time. They didn't brief it either. There's been no briefing on this issue. Well, that's a bad, I thought there was some briefing on it. But is there a state issue? I thought the state statute specifically says that it doesn't apply here, Perry, at the end. Doesn't the statute or the regs say it doesn't apply to charter cities? The city of Los Angeles is not subject, generally speaking, to state wage and hour law. It is governed only by the FLSA. The claims that are subject to the appeal are only FLSA claims. I mean the statute, the California statute says sections 200 to 211 inclusive do not apply to the payment of wages of employees directly employed by any county, incorporated city, et cetera. That's true as well. So I don't know how you lost the other case, but that's another question. Maybe these particular subsections were not covered, but these particular subsections are covered. It was a different issue, I believe, in the other case. I didn't litigate the other case, so I'm not as intimately familiar with it, but I do know the ultimate holding only applies to commercial drivers, not police officers. Going back to what I thought the case that we're here today is about, the first issue, as you articulated, was whether it is legal under the FLSA to compensate police officers employed by the city with non-FLSA CTO. Is there any FLSA statute or any federal statute that says people have to get paid at a particular time? There is – well, there is – part of the FLSA does say that overtime is due within the next pay period, overtime earned and accrued. Okay. Compensatory time, though, is paid. It's paid when it's put into the employee's bank. They get to use – it's like vacation leave. At that point, they don't have to use it on that day. Which is the statute that says overtime has to be paid at whatever? Is that a statute or regulation? What is it? It's within 207, I believe. Okay. Go ahead. It concerns timely payment of overtime. And the employer has two ways of complying with that, paying cash or, where there's an agreement in the public sector, paying compensatory time in lieu of cash.  In this case, it's a collectively bargained agreement to pay CTO for gap hours or MOU overtime only because the city does not want to be bound by the restrictions that come with CTO – FLSA CTO. There's much more restrictions there. There's no dispute. The agreement says what it says. The question is whether that agreement is legal. The FLSA regulations, the Department of Labor regulations, I believe it's 29 CFR 553.28, expressly allow for this type of arrangement. The Parker case, the Barker case that we cited in our brief, they've analyzed this issue already and have concluded this is a perfectly legal arrangement. Well, that's not us. And the fact of the matter is, going back to counsel's point on whether cash was paid for FLSA overtime worked, the city's declaration, Truc Nguyen, does establish that all officers, whenever they hit that 171-hour threshold, the city pays out all officers at cash, not CTO. Anything under that amount is paid at CTO. And we did meet our burden, I believe, with that declaration. What do we do with at least the allegation that we've got a problem with the 20 percent such that you are taking people out of the system, if I can say it that way, by giving them more than 20 percent of non-law enforcement work? Well, first of all, the question comes down to how the issue was raised, which was in the context of a summary judgment motion. Our summary judgment motion established that all officers in the city are exempt, are covered by the 207-K exemption. We established that through the MOU. There's an express provision in there, I believe it's 4.1 of the MOU, where the union agreed that the city has established the exemption for all of the officers. But what about the suspended officers? That's the only piece of this that seems to me to perhaps have – I couldn't hear you, Your Honor. The suspended officers. I gathered this – I mean, the definition includes the authority to arrest. I gather the suspended officers do not have the authority to arrest at all. It's not a 20 percent problem. Well, it depends on what we mean by suspended officers. It's really unclear from their allegations and their declarations. If an officer is suspended at the LAPD or other public agencies, they're not working at all if they're truly suspended. If they're placed on what's typically called administrative leave, paid administrative leave, they're assigned to desk duties, for example, in lieu of patrol duties or something like that. They're not doing law enforcement activities in that scenario. They have authority to arrest? They still would, yes. And the declarations that were submitted here do not state that they lost their powers to arrest. All they say is my police powers were suspended. They don't say my power to arrest was suspended. And there is a difference. A desk officer still has the power to arrest. They may not be out in the street to go arrest someone, but they still have that legal power to arrest. Let me ask you a question. They're still peace officers. They're still peace officers. And if you go back and look at the regulations, 553.211 and 212, 553.211 says that police officers are still doing law enforcement activities when they're doing duties that are incidental to law enforcement activities. And that includes, if you look at subdivision G and C, if you read those two together, that includes clerical work associated with the police work. 212, 553.211 talks about non-exempt duties, something completely unrelated to these incidental duties associated with police work. But the key question is when they say we don't have our police authority, one can't infer from that it means they don't have the power to arrest. I understand you disagree with that. I'm a little suspicious or a little skeptical that people who, or I guess to put it another way, I hope it isn't true that somebody who has been put on desk duty because they're being investigated for some problem like a use of force or something still has the power to go out in the street and arrest somebody. Well, people are placed on these different statuses depending on a variety of scenarios which have not been flushed out at all by the plaintiff's declarations. Typically speaking, an officer who is being investigated for something serious like a bad shooting or something like that, they're going to be put on paid administrative leave, assigned home, not working at all. They're not going to be allowed to do desk work. It simply won't happen. Let me ask you a question that's much more specific. Is David Burrows a plaintiff? No. He's not a plaintiff in this case? No. So I was misled, I guess, by, I didn't read carefully enough because I read the order by Judge Feist to say, well, plaintiffs argue that plaintiffs included Mr. Burrows, but he's not a plaintiff. No, the only one plaintiff who submitted the declaration that goes to this issue of suspension was Flores. And his declaration is very conclusory and vague. He basically says I was assigned administrative duties and I had my, I believe the language is police officer power suspended. It doesn't say his powers of arrest were suspended, and he doesn't go into any sort of detail helping us define what it means by doing administrative duties. As I noted in Section 553.211, incidental clerical duties are still law enforcement duties. That's not the question, because he says my peace officer powers were suspended. That's what he says. That's what he says, but he doesn't say his powers of arrest were suspended. And moreover, there is no authority, when you look at these regulations, that suggest that a temporary suspension of even the power to arrest means you're not covered by the exemption. In fact, I would argue that the regulation specifically, 2.211, contemplates minor deviations from typical law enforcement duties. I don't understand that part. I mean, if somebody is a police officer and then he transfers to a job as a lab technician and he specifically no longer has the power to arrest, even if that's only for two months, I assume he's not covered. Well, that would be a very different scenario than a police officer who is sitting in a detective chair going through police files or things of that nature. So you really do have to look at what is the nature of these assigned duties while they're, quote-unquote, suspended. Let me just read the language. You know it almost by heart because you quoted it almost verbatim, but I'm now just quoting from Paragraph 6 of Mr. Flores' declaration. Flores states in the declaration, Additionally, during the time period from August 13, 2012 to February 14, 2013, so we know precisely when it was, my peace officer powers were suspended and I was required to work in an administrative role. Due to the suspension, I was no longer subject to the 207k exemption. Well, I'm tempted to read that as saying, listen, I didn't have power of arrest. I didn't have whatever it was that was required to keep me within the 7k. So what's wrong with my reading it that way? Because that's, A, that's not what that says. He does not say my powers to arrest were suspended. What's he mean then when he says my peace officer powers were suspended? I don't know what he means. He could be misconstruing the fact that he's sitting at a desk job. He also is making a legal conclusion in there that is that he was not covered by the exemption. But he could be simply misunderstanding the legal nature of what him being placed in an administrative assignment means. We don't know what he thinks. I don't know. And do you have a declaration from your side that says when we suspended Mr. Flores, he still had the power to arrest? No, we don't have a declaration like that. We didn't need it. We don't believe we needed a counter declaration. Ultimately, the burden is on you to prove the exemption. And it does seem to me he's probably said enough to at least put you to that burden. Well, we submitted a declaration establishing that every single police officer at the LAPD, including these folks. My understanding of what the declaration said, and I think it's probably sufficient, whether you don't have a declaration like Flores's, was essentially we treat them that way. In other words, which declaration was this? Who wrote the declaration? The one I just read? No, no, the one that you're talking about. Troop win. Okay. Where is that? That is in the supplemental. Oh, it's in the plaintiff's excerpts. And what are you relying on in that declaration? It's right here. Which paragraph? In paragraphs five and seven, the entirety of the declaration talks about the implementation of the MOU and the fact that the FLSA rule, or what used to be called the 19-hour rule, is applied to all plaintiffs, all officers. You're just saying you're doing it, but you're not justifying doing it. That's the problem. Well, at that point, we have established that we applied the 7K. But you're just saying we're being good boys. And now he says, but wait a minute, I was on administrative leave. I no longer had peace officer powers, and I was therefore not treated properly. And you didn't respond to that with respect to him. No, not in the reply, no, because we were a moving party at that point. And we did object to, we objected to that testimony as being overly vague. We submitted written objections, which were granted, because it is overly vague in our view. He doesn't lay foundation. What do you mean were granted? Did he strike his declaration? I don't believe they, he agreed with us that it was overly vague and lacked foundation as to what he was talking about when he said, my peace officer powers were suspended, and I was doing administrative tasks. Therefore, what? And therefore, he struck the declaration. It was not enough to overcome what we established, which was he was doing law enforcement activities. But how did you establish that? All you said was we treated him as doing law enforcement activities. The union agreed in the collectively bargained contract that every single LAPD officer is doing law enforcement activities. Where does it even say that in this declaration? It doesn't say it in the declaration. It says it in the MOU, which is a contract, which is a legislative act. Is the MOU part of the record here? Yes, it is. And where is that in the MOU? It's in section 4.1, I believe it is, of the MOU, where the union declares the city has established the exemption for all its officers. At that point, it becomes incumbent upon plaintiffs to show that they were somehow not covered by the exemption. Which is the provision in the MOU you're talking about? I don't see that. I see where it says management. 4.1? 4.1.1, I believe it is. Okay. 4.1. Management and the league agree that management has adopted the partial overtime exemption for employees entitled to receive overtime pursuant to this MOU. I mean, yes, we're doing it, but where does it say that we have the right people? That we have the right people? Yes. In other words, all you're saying is we're doing this. But there's no agreement that these people are, in fact, police officers for purposes of... Plaintiffs admit they're police officers. They admit that they're covered by the MOU in their First Amendment complaint. Both those things are admitted. Secondarily, if you go back to 29 CFR section 553.511 subdivision C, there's a presumption that city police officers who are employed and paid as such are performing law enforcement activities. There's a presumption there that someone whose title is city police officer... Where is that? Tell me where that is. I mean, I must say that I was inclined to believe anything you said at the beginning, but now everything I've checked has not turned out to be what you said. So now I'm going to check that one. Go ahead. I mean, I really was believing everything you said at the outset, but everything I've checked has not been as you said it was. So let's try again. What's this one now? What is this statute of regulation you're talking about? 29 CFR 553.211. Okay. And what does it say now? Subdivision C says typically employees engaged in law enforcement activities include city police, district or local police, sheriffs, undersheriffs, or deputy sheriffs who are regularly employed and paid as such. And then it goes on. It says typically. Typically employed... Typically. But there's a presumption there that someone who is admittedly employed as a city police officer is engaged in law enforcement activities. I don't see any presumption. There's no presumption there. It's just... It's a presumption. You add that to the MOU where the union agrees, hey, all of our members are covered by the exemption. I haven't seen that said either. The MOU didn't say that. That is the section that you're at, 4.1. Management and the league agree that management has adopted the partial overtime exemption of 29... Right, they've adopted it. They're doing it. It doesn't say we've agreed they're properly doing it. It doesn't agree that these people are supposed to be in it. It doesn't say who they are or anything about it. This is a union, though, that binds their members. This is an admission on the plaintiff's part. That's the whole point of collective bargaining. This was just brought as an individual action on behalf of, what, 20, 19 or so individuals? Excuse me? This was not a class action, right? It was sought to be one, but ultimately it was only 20 officers. Well, is it no longer a collective action or no longer sought to be a collective action because the individuals have been dismissed out? That is to say, if we were to, for example, say that looks to us as though Mr. Flores, with this paragraph 6, has sufficiently alleged that he was improperly treated and taken out of this category, would then there be a motion for collective action certification? Well, I think that's at most you could say that Flores met with that declaration established that he was somehow exempted from the exemption or accepted from the exemption. Yeah, let's assume that that happens. It may or may not, but let's assume that that happens. Okay. And then theoretically, any officer, well, they would have to bring a motion to get it certified or under a local rule. Right. But we never got there in this case because the district judge dismisses all the individual plaintiffs. Well, actually, and the plaintiffs never even sought to get certification as a collective action either. Well, I don't think in their case they wouldn't either, given the posture of the case. I mean, there wasn't time yet. I mean, they've got to survive these motions. Well, under, I believe it's local rule 23, there was a 90-day period to bring a motion for certification, and that's been applied to collective actions under the FLSA. That was never done. Farther into the case, we did a motion dismiss. Many months later, we had a motion for some reduction. Right. And Flores is the only plaintiff that submitted an affidavit. Yes. Is that right? Well, no, there were a couple of other plaintiffs who submitted declarations, but he's the only one who talked about my peace officer powers being suspended and raising the inference that that means he was somehow accepted from the exemption. Now, you may be able to correct me. My impression is if Burroughs is not a plaintiff, that the only two plaintiffs who filed declarations that we have on the record are Flores and Fernandez. I believe my tally was there were four plaintiff declarations total. Okay. And who besides Flores and Fernandez? Fernandez.  Sorry. The four declarations are Flores, Burroughs, Fernandez, and Alaniz. Fernandez and Alaniz, is that it? Alaniz. Alaniz. Is Alaniz a plaintiff? He's not a plaintiff in this case. No. And Burroughs is not a plaintiff in this case? No. So, so far I've got declarations from only two of the plaintiffs in this case, Flores and Fernandez. Are there others? How about Antonio Perez? Is he a plaintiff? No. For a total of eight declarations, only one of those declarations went to this particular issue, and that was with Flores. I can tell you that for certain. I believe of those eight declarations, only four of them were from actual plaintiffs. The other four were from other officers. Well, perhaps the lawyer for the plaintiffs will tell us which of the declarations are from people who are actually plaintiffs. Okay. Any other questions? No, thank you. Your Honors. So, Mr. Peterson, can you tell us which of the declarations are from actual plaintiffs in this case? Of the declarations you received, each of those persons was going to opt in to the case. No, no, I don't want people who are going to opt in. Then the four people you just mentioned are the only four that actually did get filed as plaintiffs. So, when you say the four people I just mentioned, could you name them so I make sure we're talking about the same ones? I just closed that page. I'm sorry. Okay. I put my notes in the wrong place sometimes. Okay. The plaintiffs in the case were Wendy Berndt, Louis Alvarado. Yes, let's go one by one. Berndt. Do we have a declaration from Berndt? I don't believe so. Okay. Next. Alvarado, Louis. Alvarado. No declaration. No declaration. Okay. Next. Ralph Camarillo. Yeah. I'm not sure if he got his in or not. I don't see a declaration here. I've not seen one. Okay. No. Okay. Next. I would go on that. S. Galley. I don't think they got one in. No, I don't see one. Okay. Next. Anthony Perez. Antonio Perez. Possibly. Antonio Perez is a plaintiff. Yes. And I think I've got something from Mr. Perez. Let me look. Yeah, so we've got a declaration from Antonio Perez. Okay, got it. Francisco J. Lopez. He looks like a plaintiff. Lopez is a plaintiff? No, no, no. He submitted a declaration. And he's a plaintiff? Yes. Okay. He's named in the first caption. And then Flores and Fernandez. Flores and Fernandez. Benedict Fernandez is a plaintiff. And Flores is a plaintiff. No. Flores is not a plaintiff? Flores? No. Wendy? He may have been added later as an opt-in, but I didn't bring that sheet with me. How about Lisa M. Phillips? Can I ask the following? I don't think so. The two of you get together afterwards and give us a list of who were the plaintiffs in the case. At the time of the summary judgment. I... I'm sorry, what? And who submitted declarations. That's fine. And with the declarations attached. Just as a joint statement from the two of you. Yep. What? So, the eight declarations are part of the city's supplemental exercise. The plaintiffs who submitted declarations were Benedict Fernandez, Rado Flores, Francisco, Florendez, Antonio, Perez, and Lisa Phillips. And one of those people, Flores, talked at all about his office of power. Okay. Thank you. That's helpful. Okay. May I? Yes, please. Thank you. First, I want to talk about the reason this is not a collective action yet. There was never enough time to make the motion. And actually, we were gathering, as you may know, you do not need to make a motion on a collective action. You can merely file opt-ins. And we have done that. I have 2,500 cops right now in an opt-in case. Same way. Now, in L.A., this idea that we have one declaration that says, relieve from duty, suspended. In 38 years of representing L.A. cops, I'll tell you one thing I know. They get assigned home. I hear they get assigned to desks, assigned here or there. Well, if they're assigned home, they don't have overtime compensation problems. That's where it gets to be really interesting. But they're assigned home to work at home, be at home, and on call all day until their shift is over. And there's no notice provided by the city. So they still must have peace officer powers if they're on call. No. Well, everybody in this state has the power to arrest. Citizen's arrest. Right. But there's no peace officer power vested. And the answer that I heard did not say peace officer. They take their badge, their gun, and their I.D. card. Who's dealing with arrests and what with? He is specifically ordered not to talk about his case, not to take any police or law enforcement action. That's all SOP at LAPD and has been for as long as I can remember. Well, I thought under the penal code, I thought all peace officers had the power of arrest. All peace officers do. But when he's stripped of his peace officer status, he doesn't. And that is exactly what they're doing. Stripping them. I don't understand the part about assigned home. If they're assigned home, even if they're on call, they're still not working overtime. I assume they're not paying them or giving them compensation or anything for overtime. They're just paying them for their regular shifts, right? Okay. Yes, that's right. But here's the problem with it. If their regular shift is 312 or some other thing, and then they have to go to court. By the way, they do still have to go to court and do other things that compensate, need to be compensated over and above what they're doing at home. They may, in fact, have overtime. Yes. That's my point. Okay. Thank you. The other point is. Now, I'm looking at Flora's declaration. He says nothing about having worked in excess of 71 hours. That wasn't really, I thought, our point on the SJ. Our point on the SJ is they were violating the law by using state law for comp time, which they cannot do. And counsel's argument to the contrary. That decision said very clearly the rest and meal breaks are applicable to the city. No, no, you're not taking my point. I'm reading paragraph six of Alfredo Flores' declaration. Okay. He says, additionally, during the time period from August 13, 2012 to February 14, 2013, my peace officer powers were suspended, and I was required to work in an administrative role. During the suspension, I was no longer subject to the 207K exemption. But he says nothing about whether he was working overtime under any calculation. He doesn't say I worked X hours, I worked Y hours. He doesn't say nothing. Shouldn't he be required to say that before he gets any money? If we could get the records, we would. The defendant has all of the records and does not want to turn them over, number one. Number two, what he said is I'm no longer subject to 207K. That means he's now at 207A, which is a five-day work week. You know, he dates his declaration March 19, 2013. He's describing events from August 13, 2012 to February 14, 2013. You say he doesn't have the records. He doesn't have any pay stubs? And this is not ancient history to him. No. This is in March, and the period that he's talking about ends a month earlier. Yes, it ends a month earlier, but he does not have pay stubs that we're aware of. We've asked all of our clients. I didn't say that. He said my pay stubs, he didn't say he didn't have them. He said my pay stubs do not adequately state how I was paid during this period. But he didn't say he didn't have them. Okay, I stand corrected. I thought that was what the point was. The point would be either way, though, Your Honors. The 207K exemption falls away to a 40-hour work week 207A mandate of pay when they are not doing their duties as a cop. He does say that despite my ineligibility for CTO in lieu of monetary overtime, the LPD forced me to accept compensation, including the forced acceptance of CTO. I should have been paid monetary overtime for all the hours worked in excess of 40 in a work week during the time period in which my police officer powers were suspended. So I think he does say he didn't get it. So what paragraph were you reading? I was reading paragraph 10. The other major issue I'd refer the Court to is— Were you reading Boris? No, I'm sorry. I was reading Boris. Boris, you're right. You're right. I wasn't. Yeah, Boris did say that. And then if the Court would mind looking at the MOU at page number 71 in our production appendix. It has the complete definition of FLSA and what it means to have non-FLSA CTO, to have FLSA CTO, and what CTO refers to. And one of the points— Which specific sections of the memorandum are you talking about? Article 6.1. 6.1? 6.1, going down to the end of paragraph I, and 6.1.2, cash compensation of overtime. And that goes down to paragraph B, and 6.13, timely payment of overtime. So they have in their own documents records of what they're supposed to be doing. This is the agreement. And no union may enter into an agreement with an employer that violates the FLSA. And to the extent also that the FLSA is being argued as not affecting their state law rights, 207.0 provides you can have 480 hours on the books, period. It provides you can have overtime, that's in this case comp time, at 171 hours, because you're not entitled to comp time, so you're working overtime under the FLSA. So there's two issues right there. And the department doesn't provide records for those. And part of this case does still discuss records. And there are none. And the other thing is they don't use the best time. Every cop clocks in and out, but they don't use those records, if I can help in any way. Okay. If there are no further questions from the bench, Berndt v. City of Los Angeles, submitted for decision. Thank you very much.
judges: Fletcher, Paez, Berzon